UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

PATRICIA B.,[1]   6:18-cv-536-JR

                Plaintiff,

                ORDER

    v.

NANCY A. BERRYHILL,
Deputy Commissioner of Social Security,

                Defendant.

RUSSO, Magistrate Judge:

    Plaintiff brings this proceeding to obtain judicial review of the Commissioner's final decision denying plaintiff's application for disability insurance and supplemental security income benefits. Plaintiff asserts disability beginning October 22, 2013, due to back pain, high blood pressure, swelling feet, headaches, and chest pain. Tr. 231, 283.

---

[1] In the interest of privacy, this order uses only the first name and the initial of the last name of the non-governmental party in this case.

After a hearing held on September 26, 2016, an administrative law judge (ALJ) determined plaintiff was not disabled. Plaintiff asserts the ALJ erred by: (1) failing to provide legally sufficient reasons for rejecting plaintiff's symptom testimony; and (2) relying on expert testimony based on an incomplete picture of plaintiff's limitations.

A.  Plaintiff's Credibility

Plaintiff testified she can't work because: she suffers from pain after sitting for ten to fifteen minutes; has to elevate her feet two times a day; has swelling in both hands with loss of strength and tingling in her fingers; has a limited range of motion; and gets sick throughout the day from her pain pills. Tr. 94. Plaintiff testified she had fusion surgery in 2014 and has had balance issues and left foot drop since then. Tr. 96-97. Plaintiff also testified she stopped physical therapy because "it hurt more than helped." Tr. 95. In addition, plaintiff noted she had planned on further surgery to implant a spinal cord stimulator to address her pain issues. Tr. 94, 95-96.

The ALJ found plaintiff retained the residual functional capacity to perform light work specifically finding plaintiff:

> could lift and/or carry ten pounds frequently, twenty pounds occasionally; she can stand and/or walk for six hours out of an eight-hour workday; she can sit for six hours out of an eight-hour workday; she can occasionally climb ladders, ropes and scaffolds, stoop, and crawl; she can frequently kneel and climb ramps and stairs; and she is to avoid concentrated exposure to extreme cold and hazards.

Tr. 58. Based on this finding and expert testimony, the ALJ determined plaintiff is capable of performing her past relevant work as a secretary and rehabilitation clerk. Tr. 62. In addition, the ALJ determined plaintiff could perform other work including receptionist, bookkeeper, and credit interviewer. Tr. 63-64.

The ALJ accepted plaintiff's testimony only to the extent her testimony is consistent with the

conclusion she can do the work described above. Tr. 59. The ALJ otherwise rejected plaintiff's testimony because plaintiff "engaged in a somewhat normal level of daily activity and interaction. The claimant admitted activities of daily living including she drives, did the books for church, mops, sweeps, does dishes, shops, goes to the movies, goes out to eat, and goes to church." Tr. 59. The ALJ also found the physical and mental capabilities required to perform these daily activities replicate those necessary for obtaining and maintaining employment. Tr. 59. In addition, the ALJ, while accepting that plaintiff's medical impairments could reasonably cause the alleged symptoms, found the limiting effects of the symptoms were inconsistent with the medical evidence. Tr. 59. Moreover, the ALJ found the treatment record revealed routine, conservative, and non-emergency treatment since the alleged onset date. Tr. 60.

    1.    <u>Daily Activities</u>

Plaintiff specifically testified regarding her daily activities:

> ... So I read a lot. I can't write as much as I used to. I used to keep, like, journals. And I did, like, a lot of administrative work for my church previously, until I had the accident and started -- you know, I couldn't keep the accounting books anymore. And I really can't do, like, computer work or anything like that anymore. So I, kind of, just read and help my daughter.
>
> Now, what I do have a problem with, like, say, if I have to mop or sweep or stand at the sink and do something, then I have that -- like, the pain from this side, and I can't stand there very long to do it. So I get a lot of help from my daughter. You know, her friends help me and my other family members, whenever they visit, help.

Tr. 97-98. Plaintiff further testified: she helps prepare meals; cannot do dishes, vacuum, or grocery shops; does not go to movies "as much anymore"; goes to eat out "now and then"; and goes to church, but sits close to the end of the pew so she "won't disturb anybody if she needs to get up." Tr. 98-99.

The record does not contain substantial evidence that plaintiff's daily activities are inconsistent with her alleged limitations or are transferable to a work setting. Plaintiff described limitations in performing her daily activities consistent with limitations she alleges prevent her from working. Moreover, the record does not show that plaintiff's daily activities involve the tasks of the jobs listed  See Fair v. Bowen, 885 F.3d 597, 603 (9th Cir. 1989):

> There must therefore be some types of evidence capable of being introduced at a hearing on which an ALJ can rely to find a pain allegation incredible.
>
> One such type of evidence would be testimony about the claimant's daily activities. If the claimant runs marathons, as an extreme example, an ALJ could reasonably assume that the claimant's pain is not so debilitating as to prevent him from working. More realistically, if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working.
>
> This line of reasoning clearly has its limits: The Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, ... and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication. Yet if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain.

Accordingly, the ALJ failed to provide a clear and convincing reason for rejecting plaintiff's testimony on the basis of her daily activities.  See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).

2.      Objective Medical Record

The ALJ summarized the medical record and determined it did not support the extent of plaintiff's alleged disabling symptoms. Tr. 59-61. However, the lack of objective medical evidence to support plaintiff's subjective pain testimony, even if true, is insufficient as a matter of law as the

sole basis to reject Plaintiff's testimony. Price v. Astrue, 2010 WL 3895545, at *4 (C.D. Cal. Oct. 4, 2010).

        3.      Conservative Treatment

The ALJ determined plaintiff's treatment was routine and conservative and that it did not support the extent of the limitations alleged. It is unclear why the ALJ determined plaintiff's treatment contradicted her alleged limitations beyond the ALJ's citation to one note in the record in which it was reported on April 22, 2015, that plaintiff obtained relief on current medications. Tr. 661.

Around October 2013, after plaintiff fell down a stairwell, she began to experience severe pain. Tr. 104. After pain management and spinal injections failed to alleviate the pain, in July 2014, plaintiff underwent lumbar fusion surgery. Tr. 104, 527, 522. Plaintiff was subsequently prescribed narcotic pain medications and used a TENS unit. Tr. 164. As plaintiff testified, the pain medications and TENS unit were not effective and she planned to have surgery to place a spinal cord stimulator. Tr. 95-96 (plaintiff testified on September 26, 2016 that tests are scheduled for stimulator surgery); Tr. 79 (persistent issues of "total spine pain" as of October 22, 2015 make plaintiff a candidate for spinal cord stimulator). The record does not demonstrate plaintiff responded favorably to conservative treatment. Cf. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (positive response to conservative treatment such as physical therapy, anti-inflammatory medication, and a TENS unit undermines reports regarding the disabling nature of pain). Accordingly, the ALJ failed to provide any clear and convincing reasons supported by substantial evidence in the record to reject plaintiff's allegations of disabling pain.

B.  Expert Testimony

Plaintiff asserts the ALJ erred in relying on non-examining physician Dr. Jon Arnow to find plaintiff could perform light work. See Tr. 164 (Dr. Arnow's opinion indicating capacity for light work dated June 8, 2015). Plaintiff incorrectly asserts Dr. Arnow's opinion did not include the MRI test results showing stenosis potentially affecting plaintiff's exiting L4 nerve roots. See Tr. 561 (October 2014 MRI showing potential affect on nerve roots). However, Dr. Arnow did, in fact, review plaintiff's MRI. Tr. 159.

Plaintiff also argues the ALJ's residual functional capacity assessment provided to the vocational expert did not include limitations on mobility, balance issues, and ability to sit and stand for long periods of time as assessed by plaintiff's treating physician Dr. Gorden Chu. Tr. 1000. However, those limitations were not actually assessed by Dr. Chu, but instead were reported to him by plaintiff. Accordingly the ALJ did not err in relying on Dr. Arnow's opinion, or in failing to include the limitations noted in Dr. Chu's report.

Nonetheless, as noted above, the ALJ did fail to properly assess plaintiff's subjective limitations which were not included in the hypothetical to the vocational expert. Therefore, it is unclear if the limitations noted Dr. Chu's report should have been accounted for in the ALJ's residual functional capacity assessment.

C.  Remand

Plaintiff argues the court should remand for payment of benefits. The court declines to do so. Although the ALJ failed to provide legally sufficient reasons for rejecting plaintiff's testimony, the record requires further development. The medical assessments, on the record, indicate plaintiff's ability to perform light work conflict with plaintiff's assertions regarding her ability to sit and stand;

therefore, further proceedings are necessary prior to any finding of disability. Because a remand for further proceedings is necessary, a remand for payment of benefits is not warranted. See Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1105, 1106–07 (9th Cir. 2014) (A remand for further proceedings is necessary based on the inconsistencies between plaintiff's testimony and the medical reports).

## CONCLUSION

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the decision of the Commissioner is reversed and remanded for further proceedings.

DATED this 9th day of April, 2019.

       /s/ Jolie A. Russo
       JOLIE A. RUSSO
       United States Magistrate Judge